UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LARRY ALLEN, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 6: 06-501-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SARA LEE CORP., d/b/a SARA LEE | ) | **MEMORANDUM OPINION** |
| BAKERY GROUP, and MARK | ) | **AND ORDER** |
| MORROW, | ) | |
| | ) | |
|     Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Larry Allen's ("Allen") motion to remand for lack of subject matter jurisdiction.  [Record No. 9] Allen claims that remand is required because there is not complete diversity among the parties.  The removing Defendant, Sara Lee Corp. ("Sara Lee"), contends that removal was proper because the non-diverse defendant was fraudulently joined and because the Allen's claims are preempted by the Labor Management Relations Act ("LMRA").  Having reviewed the parties' briefs and relevant authorities, the Court finds that the non-diverse defendant was not fraudulently joined and that Allen's state law claims are not preempted by the LMRA.  Therefore, the Court will grant the motion to remand.

## I.    BACKGROUND

Allen was an employee of Sara Lee from April 25, 2005, until he was terminated on March 16, 2006.  He filed the current action in Laurel Circuit Court on October 16, 2006,

-1-

alleging breach of contract, promissory estoppel, sex discrimination, and the tort of outrage against Sara Lee.  Only the claim of outrage is alleged against Defendant Mark Morrow ("Morrow"), a Kentucky resident.

In his complaint, Allen alleges the following facts in support of his claims:

i.      During the time Allen was employed, Sara Lee had an attendance policy that required dismissal for accumulating eight occasions within a rolling twelve month period;

ii.     Prior to the events immediately preceding Allen's termination, Allen had accumulated 6.5 occasion points due to absences and tardiness;

iii.    On February 27, 2006, Allen's pregnant wife was hospitalized at Marymount Hospital, in London, at 28 weeks gestation;

iv.     Thereafter, his wife was airlifted to Central Baptist Hospital in Lexington, and monitored for pre-eclampsia;

v.      Allen was not scheduled to work until March 1, 2006; however, he notified his supervisor, Clay Kennett, of his wife's medical situation before that date;

vi.     On or around March 1, 2006, Allen drove from Lexington to London and gave Ed Bauer, the Human Resources Manager, a medical excuse; however, Bauer did not accept the excuse because it did not address Allen's personal health situation;

vii.    On March 3, 2006, Allen obtained a medical excuse from his physician for the period from February 27 through March 15, 2006 and delivered it to Sara Lee;

viii.   Until March 3, Allen had telephoned his supervisor, Clay Kennett, every day informing him of his wife's condition and the fact that Allen still needed to be off work, to which, each time, Kennett indicated "okay";

ix.   On March 3, 2006, Allen's wife delivered their son by emergency cesarean section;

x.   When Allen returned to work on March 16, 2006, he was to told to report to Plant Manager Mark Morrow;

xi.   Before entering a meeting with Morrow and three other individuals, Allen overheard Morrow state to the others, "let's do it";

xii.   During the meeting, Morrow informed Allen that he was terminated due to absenteeism;

xiii.   Allen refused to sign the termination notice;

xiv.   Allen's health insurance through Sara Lee was immediately cancelled upon his termination, and there have been substantial medical bills for his wife and son.

[*See* Record No. 1, Ex. A.]

On November 13, 2006, Sara Lee removed the action to this Court, alleging that Allen had not asserted a colorable claim against Morrow under Kentucky law.  Specifically, Sara Lee contends that Allen cannot establish three of the four elements for a prima facie case of the tort of outrage.  Subsequently, on December 5, 2006, Allen filed the motion to remand which is currently before the Court.  In its response to Allen's motion, Sara Lee raises, for the first time, a federal preemption argument under the LMRA, 29 U.S.C. § 185, in support of removal.  Sara

Lee notes that, at all times relevant to the facts contained in the complaint, Allen was a member of a bargaining unit represented by Local 531 of the Bakery, Confectionary, Tobacco Worker, and Grain Millers International Union, AFL-CIO ("Union"). As a member of the Union, he was subject to a collective bargaining agreement ("CBA") entered into between the Union and Sara Lee. Sara Lee contends that the Court has original "federal question" jurisdiction, inasmuch as Allen's state law claims of breach of contract, promissory estoppel and the tort of outrage are preempted by § 301 of the LMRA.

## II.   DISCUSSION

The statute authorizing removal, 28 U.S.C. § 1441, provides that an action is removable only if it could have been brought initially in federal court. A federal court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. 28 U.S.C. § 1332(a). Additionally, federal courts have original "federal question" jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U .S.C. § 1331. In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Additionally, statutory procedures for removal are to be strictly construed, and any doubts concerning jurisdiction should be resolved in favor of remand. *Sygenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002).

### A.   Fraudulent Joinder

The burden of establishing jurisdiction is upon the defendant as the removing party. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir. 1989). In *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999), the Sixth Circuit explained the relevant considerations in analyzing a claim of fraudulent joinder, noting that:

> the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Further, in reviewing jurisdiction generally, it should be noted that,

> [t]his court has a responsibility to accept jurisdiction in all proper cases. [However,] [i]t has a greater obligation to protect the jurisdiction of the State court, both by reason of comity to that court and fairness to litigants who have chosen it as a forum. Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction.

*Walsh v. Am. Airlines, Inc.*, 264 F. Supp. 514, 515 (E.D. Ky. 1967). Based on these authorities, this Court must remand the case to state court if there is any doubt regarding its ability to retain jurisdiction.

Sara Lee argues that this Court has jurisdiction because Allen fraudulently joined Morrow to the action. The only claim asserted against Morrow is the tort of outrage, and Sara Lee contends that there is no reasonable basis for predicting that Allen will prevail on this claim. More specifically, Sara Lee contends that Allen cannot establish three of the four elements

necessary to establish a claim for the tort of outrage.  Allen contends that he has asserted a colorable claim against Morrow under Kentucky law, as he has sufficiently alleged all the elements in Count III of his complaint.

To prevail on a claim for the tort of outrage under Kentucky law, a plaintiff must prove the following elements: "(1) The wrongdoer's conduct must be intentional or reckless; (2) The conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) There must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) The emotional distress must be severe." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).  In the present case, Sara Lee disputes that Allen can prove all but the last element of his claim against Morrow.

However, it is not the role of this Court to determine whether Allen can ultimately prevail on his claim.  *See Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F. Supp. 2d 694, 697 (W.D. Ky. 2000).  "Rather, this Court must examine the pleadings for allegations, which if proven, would provide a reasonable basis for a finding of liability against [Morrow]."  *Id.*  As noted previously, to succeed on an allegation of fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."  *Coyne*, 183 F.3d at 493; *see also Alexander v. Data Electronic Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) ("There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in

view of the law.") (citing *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)).

In his complaint, Allen fully alleges the requisite elements for a claim for tort of outrage. [*See* Record No. 1, Ex. A, p.9.] He further alleges specific facts which could be construed to provide a reasonable basis for predicting a finding of liability against Morrow. Allen contends that he was told by his superiors that he would only receive one occasion point for his absences due to his son's premature birth. His supervisor, who reports to Morrow, instructed him to bring in a doctor's note, but then refused to accept it because it did not address his personal medical state. Thereafter, Allen obtained a second doctor's note excusing him due to depression and delivered that note to the human resources manager at Sara Lee. However, when he returned to work, he was called into a meeting with plant manager Morrow and subsequently fired for his absences. Prior to entering the meeting, Allen overheard Morrow state "let's do it." Because of his termination, Allen's health insurance was cancelled and he was not able to put his newborn son on his insurance. Additionally, Allen alleges that he has suffered severe distress.

Based on these allegations, Sara Lee does not dispute that Allen can establish that his distress was severe. It is also clear that Allen can establish that he suffered severe distress because of his termination and the cancellation of his insurance benefits. Although Sara Lee contends that Allen cannot establish this causal connection, Allen sufficiently stated it in his complaint, and this Court cannot conclude that he would be unable to prove it at this early point in the litigation. The closer questions are whether the conduct was intentional and so severe to offend generally accepted decency and morality.

In *Kroger Co. v. Willgruber*, 920 S.W.2d at 67, the Supreme Court of Kentucky held that outrageous conduct in connection with a termination can be the basis for a tort of outrage claim. In that case, the plaintiff presented evidence that his employer repeatedly misrepresented that he would be eligible for a job, knowing that the job would not materialize, delayed the payments of his disability benefits, and demanded surveillance of his disability, all in an attempt to induce him to sign release documents absolving the employer of liability for its wrongful discharge. *Id*. at 66-67. Like the plaintiff in *Kroger*, Allen alleges that his employer made false promises concerning his employment, instructed him to get a medical excuse for his personal medical state so that his absence would only count for one occasion, then proceeded to fire him for his absences despite his valid excuses. Allen refused to sign the termination notice, and his benefits were immediately cancelled due to his termination. While Allen's allegations regarding Morrow's conduct may not ultimately demonstrate the requisite intent and outrageous conduct, "it would be unfairly presumptuous for this Court to conclude these facts and those developed through discovery support *no reasonable basis* for [Allen's] claim that this behavior offends generally accepted standards of morality or decency." *Sprowls*, 119 F. Supp. 2d at 697 (emphasis added).

Because this Court finds that Sara Lee has not presented sufficient evidence to show that there is no reasonable basis for a finding of liability against Morrow, the Court cannot conclude that Morrow was fraudulently joined to this action. And because Morrow is a citizen of the same state as Allen, diversity jurisdiction does not exist in this case. Accordingly, the case must be

remanded under 28 U.S.C. § 1447. This conclusion is bolstered by the fact that all doubts are "resolved in favor of remand." *Coyne*, 183 F.3d at 493.

### B.    Preemption

A complaint filed in state court is removable, without regard to the citizenship of the parties, if it alleges a claim "aris[ing] under" the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1441(b). In determining whether a federal question has been raised in the initial pleading and, therefore, may be removed from state to federal court under 28 U.S.C. § 1441(a), courts generally are guided by the "well-pleaded complaint" rule. This rule provides that "federal jurisdiction exists only when a federal question is presented on the face of [a] plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under this rule, "the plaintiff [is] the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

The Supreme Court has recognized an exception to the well-pleaded complaint rule. This exception, otherwise know as the "complete preemption" doctrine, occurs when the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393. Federal preemption is typically raised as a defense to allegations in a plaintiff's complaint. *Id.* at 392. However, complete preemption that supports removal and ordinary preemption are two distinct concepts. *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) (en banc). The defense of preemption, typically raised in a motion to dismiss, can prevent a claim from proceeding. However, unlike complete preemption, it does not convert a state

-9-

claim into a federal claim. *See Caterpillar*, 482 U.S. at 398 (recognizing the distinction between complete and ordinary preemption).

Section 301 of the Labor Management Relations Act, provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).  Congress enacted § 301 to give courts jurisdiction to enforce collective bargaining agreements and to compel uniformity in the application of federal labor law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957).  In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Supreme Court held that when resolution of a state law claim is substantially dependent on an analysis of the terms of a collective bargaining agreement, the claim is preempted and federal labor law applies.  *Id.* at 220; *see also Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).  The Sixth Circuit has reaffirmed this principle stating that:

> Section 301 preempts only state law claims that are substantially dependent on analysis of a collective-bargaining agreement, not claims that only tangentially involve CBA provisions.  Furthermore, a defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 [complete] preemption.

*Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir. 1990) (internal quotation marks and citations omitted).

The mere existence of a collective bargaining agreement does not prevent an individual from bringing state law claims based on some independent agreement or obligation. *Caterpillar*,

482 U.S. at 396; *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("the bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished").   As noted by the Supreme Court

> [not] every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301.  The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis.

*Allis-Chalmers*, 471 U.S. at 220.

In *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994), the Sixth Circuit adopted a two-step approach for determining whether § 301 preemption applies.  First, the court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement provision.  *Id.*  Second, the court must determine whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.  *Id.*  "If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption.  However, if neither or only one criterion is satisfied, section 301 preemption is warranted." *Id.*

Here, Sara Lee argues that the Allen's state law breach of contract, promissory estoppel and tort of outrage claims are preempted by § 301 of the LMRA.  As the party seeking removal, Sara Lee has the burden of establishing that the Plaintiff's claims are completely preempted.  *See Valinski v. Detroit Edison*, 197 Fed. App'x. 403 (6th Cir. 2006).  Thus, the Court will examine each of the state law claims to determine whether it has satisfied its burden in establishing that these claims are preempted by § 301 of the LMRA.

-11-

### 1.       Breach of Contract

In the Complaint, Allen alleges that he "entered into a contractual arrangement concerning employment and other related terms with the Defendant when he began his employment in April 2005." [Record No. 1, Complaint ¶ 64]  Examining the Complaint, it appears that Allen's breach of contract claim relates to his employment contract with Sara Lee – in particular, the attendance policy.  Allen cites to specific provisions of the attendance policy and alleges that Sara Lee made certain representations which caused him to "believe[] his job was being held for him." [Record No. 1, Complaint ¶ 50]  These alleged representations appear to have been made independent from any promises contained in the CBA.  Sara Lee contends that the Plaintiff's breach of contract claim requires interpretation of the "just cause provision" of the CBA.  However, as previously noted, reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption.  *Fox*, 914 F.2d at 799-800.

In *Caterpillar v. Williams*, the Supreme Court stated:

> It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives.  But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule – that the plaintiff is the master of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.  When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.  But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.  *Congress has long since decided that federal defenses do not provide a basis for removal.*

*Caterpillar*, 482 U.S. at 397-98 (emphasis added) (footnote omitted).  In *Caterpillar*,  the

plaintiffs alleged that their employer had breached individual promises of employment security

by firing them.  These promises were allegedly made to them after they had transferred from

hourly positions covered by a CBA to managerial or salaried positions not covered by a CBA.

The plaintiffs initiated a state law breach-of-contract suit in California state court and the

employer removed the suit to federal court, contending that the plaintiffs' state-law claims were

"in reality completely pre-empted § 301 claims, which therefore arise under federal law."

*Caterpillar*, 482 U.S. at 394.  In finding that removal was improper, the Court noted that:

> Section 301 governs claims founded directly on rights created by
> collective-bargaining agreements, and also claims "substantially dependent on
> analysis of a collective-bargaining agreement."   [The plaintiffs] allege that
> Caterpillar has entered into and breached individual employment contracts with
> them. Section 301 says nothing about the content or validity of individual
> employment contracts.  It is true that [the plaintiffs], bargaining unit members at
> the time of the plant closing, possessed substantial rights under the collective
> agreement, and could have brought suit under § 301.   As masters of the
> complaint, however, they chose not to do so.

*Caterpillar*, 482 U.S. at 394-95 (citations omitted).

Similar to *Caterpillar*, Allen has not referred or alluded to a CBA in the Complaint.

Rather, the CBA and federal preemption has only be injected into these proceedings by Sara Lee

as a defense to the claims asserted by Allen.  *See e.g., Livadas*, 512 U.S. at 124 (noting that "the

bare fact that a collective bargaining agreement will be consulted in the course of state-law

litigation . . . does not require the claim to be extinguished").  While the state court may be

required to interpret the "just cause" provision of the CBA to determine the merits of Sara Lee's

federal defense, Sara Lee cannot transform the action into one arising under federal law simply

by raising a defense that requires interpretation of a CBA provision.  Because resolution of the breach of contract claim does not require interpretation of a provision of the CBA, the Court finds that this claim is not preempted by § 301 of the LMRA.

## 2.     Promissory Estoppel

To recover under the doctrine of promissory estoppel, a plaintiff must establish that he reasonably relied on a statement of another and materially changed his position in reliance on that statement.  *See Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636 (Ky. App. 2003).  Sara Lee allegedly made certain promises to Allen "concerning job security."  [Record No. 1, Complaint ¶ 68]  The Court need not review the CBA to determine whether that promise induced action or whether Allen suffered an injury due to his reliance on the promise.  In addition, interpretation of the CBA is not required to determine whether Sara Lee should have expected Allen to rely on its representations and whether Allen reasonably did so.  Again, because Allen is seeking to enforce a promise independent of the CBA, the Court finds that the promissory estoppel claim is not subject to § 301 complete preemption.

## 3.     The Tort of Outrage

To support its position that Allen's tort of outrage claim is preempted, Sara Lee relies on the Sixth Circuit's decision in *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 802 (6th Cir. 1990). Specifically, the Defendant asserts that:

> [t]he Sixth Circuit has considered outrage claims under Section 301's preemption doctrine and held that to avoid section 301 preemption of an intentional infliction of emotional distress claim, the state tort must be either unrelated to the termination itself or a function of the particularly abusive manner in which the termination is accomplished or threatened, rather than a function of the actual or threatened termination itself.

-14-

[Record No. 13] (citing *Fox*, 914 F.2d at 802). While Sara Lee accurately quotes *Fox*, it fails to indicate that this a direct citation from the Sixth Circuit's decision in *Beard v. Carrollton R.R.*, 893 F.2d 117 (6th Cir. 1989), which has been undermined by subsequent cases. *See Roddy v. Grand Trunk Western R.R. Inc.*, 395 F.3d 318, 324-25 (6th Cir. 2005); *see also Tyree v. Burlington Northern and Santa Fe Ry. Co.*, 973 F. Supp. 786, 791 (W.D. Tenn. 1997) (concluding that *Beard* is no longer good law). In *Beard*, the Sixth Circuit addressed the issue of preemption in the context of Railway Labor Act ("RLA"). The Court concluded that the plaintiff's state law claims had not been removed "improvidently and without jurisdiction." Discussing this finding, the Sixth Circuit noted in a later case that,

> [a]lthough this finding suggests that the RLA completely preempted plaintiff's state law claims, [the Court] did not engage in any discussion of the distinction between complete preemption and ordinary preemption and [] did not analyze the RLA for Congressional intent. Most of [the] opinion in Beard was dedicated to the issue of ordinary preemption rather than complete preemption.

*Roddy*, 395 F.3d at 324. Therefore, the *Roddy* Court held that, "to the extent we found complete preemption in *Beard*, that holding has been undermined by subsequent cases . . . that have discussed the prerequisites for a finding of complete preemption." *Id*. Here, inasmuch as the Court must determine whether there is *complete* preemption of the intentional infliction of emotional distress, the analysis concerning the issue of *original* preemption is not persuasive.

In *Craft v. Rice*, the Kentucky Supreme Court adopted the tort of outrageous conduct from the Restatement (Second) of Torts § 46 as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

-15-

*Craft*, 671 S.W.2d at 250-51. If the court is required to refer to the CBA in order to determine whether the defendant's conduct was outrageous, then the tort of outrage claim is preempted.

In *DeCoe*, 32 F.3d at 220, the Sixth Circuit found the plaintiff's intentional infliction of emotional distress claim was preempted. There, the behavior in question was a false allegation of sexual harassment. The employer alleged that the CBA required it to promptly investigate and deal with charges of sexual harassment, inasmuch as the CBA contained a sexual harassment policy that imposed a duty on the union, workers, and the company to resolve sexual harassment claims. In finding that the intentional infliction of emotional distress claim was preempted, the court held that reference to the CBA was required to determine whether the employer was simply pursuing its legal rights or was otherwise acting outrageously.

In contrast, in *Williams v. York Intern. Corp.*, 63 Fed. App'x 80 (6th Cir. 2003), the Sixth Circuit held that an employee's claim against an employer for intentional infliction of emotion distress was not preempted. In *Williams*, the Plaintiff alleged that he was wrongfully terminated and was subject to outrageous and extreme conduct by his supervisor. The court concluded that the question of whether the supervisor's conduct exceeded bounds of common decency and was beyond what a reasonable man could endure could be decided without reference to the parties' CBA.

The facts of *Williams* case are more analogous to the present case than the facts of *Decoe*. Here, Allen's intentional infliction of emotional distress claim is based upon an allegedly outrageous form of sexual discrimination which he claims caused emotional distress. In addition, he alleges that the manner in which the plant manager Morrow fired him constituted

-16-

outrageous behavior.  Allen has not alleged (and Sara Lee has not suggested) that Sara Lee's or Morrow's conduct was in any way permitted or required by the CBA.  Because the Defendants' conduct can be judged without reference to the CBA, the Court finds that the intentional infliction of emotional distress claim is not preempted by section 301.

### III.   CONCLUSION

Because Sara Lee has failed to present sufficient evidence that Morrow was fraudulently joined as a defendant in this case, the Court does not have diversity jurisdiction.  Likewise, Sara Lee has not demonstrated that Allen's breach of contract, promissory estoppel and tort of outrage claim are preempted by § 301 of the LMRA.  Therefore, the Court does not have federal question jurisdiction.  Accordingly, it is hereby **ORDERED** as follows:

1.      The Plaintiff's motion to remand [Record No. 11] is **GRANTED**;

2.      The Defendant's motion to dismiss [Record No. 12] is **DENIED**; and

3.      This matter is remanded to Laurel Circuit Court for further proceedings.

This 6th day of February, 2007.



Signed By:

*Danny C. Reeves*

United States District Judge